After a jury trial in the District Court, the defendant, Jorge Delarosa, was convicted of assault and battery on a police officer and resisting arrest. On appeal, he contends that (1) the judge incorrectly instructed the jury on self-defense; (2) the judge erred in questioning and dismissing a sitting juror; (3) the prosecutor made improper remarks in closing argument; and (4) the Commonwealth presented insufficient evidence to sustain a conviction for resisting arrest. We affirm.
Background. Around 5:00 A.M. on July 27, 2013, Lynn police Officers Cedric Pierre and Taylor Haberek were dispatched to the defendant's residence in Lynn for a 911 hang-up call. Upon arrival, Officer Haberek thought he "heard someone talking," and approached the side of the residence. Through a window, he saw the codefendant, Martin Corona,[2] and heard a woman ask in an angry tone, "Why did you hit her?" When Corona moved toward the back of the house, Officer Haberek walked in that direction and eventually "heard a female crying, pretty upset, and a male yelling through his teeth at her, trying to hush her." Officer Haberek then returned to the front of the house where he found Officer Pierre inside, speaking to a female resident. At this time, Corona emerged from the rear of the residence. Corona was visibly agitated, intoxicated, walked toward the officers, "kept on yelling" at them, and insisted that they needed a warrant to be inside the home. As Corona moved closer, Officer Pierre perceived the smell of alcohol emanating from him.
The officers advised Corona and the other residents that they had received a 911 call, and "needed to check on everybody." Corona continued to yell and, joined by the defendant, blocked the officers from checking on the woman in the rear of the residence. The defendant yelled, "You can't go-You can't go in the back. You can't go in the back." Officer Pierre smelled alcohol on the defendant's breath and testified that both he and Corona were intoxicated. The situation quickly escalated. Corona grabbed Officer Haberek and both Corona and the defendant pushed the officers; the defendant put his hands on Officer Pierre, who then called for backup. The officers informed the defendants that they were under arrest. The defendants did not comply with the officers' commands.
After backup officers arrived, Officers Pierre and Haberek pointed to the defendant and stated, "he's in custody." The defendant then "took off runnin [g]" from the officers, who pursued him through the house and into the basement. A chaotic scene ensued. The defendant ignored multiple requests by the officers to stop. He also attempted to strike Officer John Bernard while resisting arrest. As the officers struggled with the defendant on the basement floor, he ignored their demands to submit. Instead, he tried to move toward dog cages that contained pit bulls. The officers believed that the defendant "was attempting to go to the cage and let one of the dogs out." The officers ultimately restrained the defendant and placed him in custody.
The defense centered on the claim that the officers beat the defendants without justification, and concocted a story as a cover-up. The defense presented testimony that the defendant had nothing to drink; that the officers beat him with their fists, knees, and baton; that the defendant could not reasonably have believed that he was under arrest because he had done nothing wrong; and that he did not strike or punch anybody. Medical records of the defendant were introduced in evidence to corroborate the defendant's claim.
Discussion. 1. Self-defense instructions. The defendant contends that a new trial is required because the self-defense instructions were incorrect and shifted the burden of proof onto the defendant. We disagree.
"[W]e evaluate the instruction as a whole, looking for the interpretation a reasonable juror would place on the judge's words." Commonwealth v. Glacken, 451 Mass. 163, 168-169 (2008), quoting from Commonwealth v. Niemic, 427 Mass. 718, 720 (1998), and "do not consider bits and pieces of the instruction in isolation." Commonwealth v. Young, 461 Mass. 198, 207 (2012). "[T]he adequacy of instructions must be determined in light of their over-all impact on the jury." Glacken, supra at 169, quoting from Niemic, supra.
Initially, the defendant did not object to the instructions provided in the judge's final charge.[3] Consequently, our review is limited to a determination of whether any alleged error created a substantial risk of a miscarriage of justice. See Commonwealth v. Alphas, 430 Mass. 8, 13 (1999).[4]
Here, we discern no merit to the argument that the judge's instructions on self-defense shifted the burden of proof. The judge repeatedly told the jury that the Commonwealth bears the burden of proving beyond a reasonable doubt that the defendant did not act in self-defense.[5] Similarly, we are not persuaded by the contention that the instructions suggested that self-defense applied only to the charge of resisting arrest and not to the charge of assault and battery on a police officer. The self-defense instruction provided in the final charge did not contain any language limiting its application to the resisting arrest count. Moreover, after repeating the elements of assault and battery on a police officer in response to the jury's question, the judge then instructed that:
"With regard to assault and battery-any kind of assault and battery, I want you to also remember that ... there is a defense here raised of self-defense.... [R]emember that it's the Commonwealth's burden to prove beyond a reasonable doubt that the [d]efendant did not act in self-defense ... and I want you to remember that the Commonwealth has to prove that the [d]efendant did not act in self-defense."
Accordingly, the jury were explicitly instructed that self-defense applies to the charge of assault and battery on a police officer, and viewed as a whole, the jury would have understood as much. Thus, the defendant's argument is unavailing.
We also discern no error in the judge's instructions regarding the use of nondeadly force in self-defense. Here, the instructions essentially tracked the Criminal Model Jury Instructions for Use in the District Court (2009), which has been cited with approval by the Supreme Judicial Court. See, e.g., Commonwealth v. King, 460 Mass. 80, 84 n.3, 87 (2011).[6] Also, contrary to the defendant's claim, the judge did not fail to instruct the jury as to self-defense in the context of the use of excessive or unreasonable force. Indeed, the judge stated that "if a police officer uses excessive or unnecessary force to make an arrest or effect an entry ... the person who is being arrested may defend himself with as much force as reasonably appears to be necessary." He further instructed that:
"[T]he Commonwealth must prove beyond a reasonable doubt that each of these [d]efendants did not act in self-defense or that the force used by the [d]efendants was unreasonable, excessive, or unwarranted in the circumstances. Reasonableness is determined by the proportionality of the force used. It is for you to determine whether the officers used excessive force and whether the persons being arrested used reasonable force to resist that excessive force, if you find it excessive."
We are confident that "on the whole, a reasonable juror would not have misunderstood the law" of self-defense. Young, 461 Mass. at 211.[7]
2. Dismissal of juror. The defendant contends that the judge erred in questioning and dismissing a sitting juror who stated his views of the case prior to the close of evidence. We discern no error in the judge's actions.
The decision to discharge a juror is entrusted to the sound discretion of the judge, who may do so at any time in the best interests of justice. See G. L. c. 234A, § 39. Here, the judge received information that a juror had not followed his instruction to not discuss the case until the close of evidence. The juror's statements also revealed that he had potentially formed and communicated certain views of the case in the presence of other jurors. Accordingly, the judge was justified in questioning the juror in order to understand the nature of the juror's concern, and to ensure that the juror was and could remain impartial. See Commonwealth v. Alicea, 464 Mass. 837, 849 n.10 (2013).
In response to the inquiry, the juror revealed, inter alia, that he "was upset being here all day. Just everything about the whole trial, and I just lost control." Asked whether he had drawn a conclusion about the case, the juror responded, "Up to this point, yeah, I have made a decision, but I haven't heard the rest." In response to the judge's follow-up question as to whether he could serve as an impartial juror, he stated, "No, I can't."
Defense counsel agreed that the judge's initial questions to the juror "were appropriate, and they were focused on determining whether or not he would be a fair juror," but contended that there was no basis to exclude the juror.[8] The judge disagreed and concluded on the record that the juror had "convinced [him] that [the juror] made his mind up." In view of this determination, and the juror's statement that he could not be impartial, the judge properly disqualified the juror. As discussed, a judge has wide discretion in this area, and he did not abuse that authority by asking questions to ensure that the juror could be impartial. See, e.g., Commonwealth v. Hampton, 457 Mass. 152, 163 (2010) (discussing right to impartial jury and that showing of juror bias is structural error). Moreover, the determination of partiality inherently involves credibility determinations, which trial judges are uniquely situated to make. See Commonwealth v. Ferguson, 425 Mass. 349, 352-353 (1997), quoting from Patton v. Yount, 467 U.S. 1025, 1038 (1984) ("The determination of a juror's impartiality 'is essentially one of credibility, and therefore largely one of demeanor' .... In such circumstances, we give a trial judge's determination of impartiality great deference"). Where, as here, the record supports the judge's determination, we discern no abuse of discretion.
3. Closing argument. The defendant claims that the prosecutor's misstatements in closing argument constituted prejudicial error. For the reasons stated below, this argument is unavailing.
The defendant first argues that the prosecutor erred in telling the jury that assault and battery on a police officer "is complete at that push, at that time, as soon as they put their hands on the officers to physically re-attempt to physically remove them from the residence." As the defendant did not object to this statement at trial, our review is limited to whether any alleged error created a substantial risk of a miscarriage of justice. See Commonwealth v. Leary, 92 Mass. App. Ct. 332, 339 (2017).[9]
The defendant concedes that the prosecutor correctly stated the law, but contends that the prosecutor should have included a statement that the Commonwealth must also prove that the defendant did not act in self-defense. We disagree. The Commonwealth introduced evidence that the defendants pushed an officer without provocation. The above-referenced statement fairly summarized that evidence. See Commonwealth v. Kozec, 399 Mass. 514, 516 (1987) (prosecutor may argue for conviction based on evidence). We also note that the judge instructed the jury before opening statements that "attorneys are not witnesses"; that if attorneys state something that differs from the evidence, it's the evidence that matters"; and, before closing arguments, that "it's [the jurors'] memory that matters, not what the attorney says." With this in mind, and in view of the judge's repeated instruction that the Commonwealth had the burden to prove beyond a reasonable doubt that the defendant did not act in self-defense, we are confident that the alleged error could not have confused the jury, much less created a substantial risk of a miscarriage of justice.
For the same reasons, the prosecutor's unobjected-to statement that the jury had to "determine whether or not the [d]efendant had a right of self-defense" did not create a substantial risk of a miscarriage of justice. Viewed in the context of the prosecutor's entire argument and the judge's instructions, the statement did not suggest that the defendant had any burden to prove that he acted in self-defense. See Commonwealth v. Gonzalez, 465 Mass. 672, 680 (2013) (remarks in closing arguments "are considered in the context of the whole argument, the evidence admitted at trial, and the judge's instructions to the jury").
Finally, we are not persuaded that the prosecutor's statements to the effect that the original aggressor in a fight cannot claim self-defense, constituted prejudicial error. To the contrary, his statements largely tracked the model jury instruction and cases cited therein. See Commonwealth v. Rodriguez, 461 Mass. 100, 110 (2011) ("Self-defense is generally not available to a defendant who provokes or initiates an attack, such as the defendant did here"). Furthermore, in light of defense counsel's objection to the prosecutor's statement, the judge offered to cure any perceived error by providing the jury with the model jury instruction regarding the "original aggressor" in the context of self-defense. Defense counsel asked the judge not to provide that instruction, and the judge complied with his request. Additionally, defense counsel did not object to the judge's final jury charge. For these reasons, and those discussed, supra, the prosecutor's statements did not rise to the level of prejudicial error.
4. Resisting arrest. There is no merit to the claim that the evidence was insufficient to sustain a conviction for resisting arrest. The defendant's argument ignores testimony from various eyewitnesses regarding the defendant's flight from the officers in the face of commands to stop, the physical altercation with the officers, and the extended struggle with the officers in the basement of the residence. Viewed in the light most favorable to the Commonwealth, see Commonwealth v. Penn, 472 Mass. 610, 612 (2015), the defendant's actions involved the use of physical force and violence against the officers, as well as other means, which created a substantial risk of causing bodily injury to the officers. See Commonwealth v. Montoya, 457 Mass. 102, 105 (2010) (listing elements of resisting arrest). Accordingly, we affirm the judgments.
So ordered.
Affirmed.

Corona referred to the defendant as his "stepfather." Corona was tried together with the defendant and convicted of two counts of assault and battery on a police officer and acquitted of resisting arrest. Their appeals were filed separately and Corona's convictions were affirmed by a panel of this court. See Commonwealth v. Corona, 88 Mass. App. Ct. 1118 (2015).

We cannot discern from the appellate record whether the lack of an objection was a strategic decision, born of satisfaction with the instructions as given, or the result of some other factor.

In response to a note from the deliberating jury seeking a copy of the elements of assault and battery and resisting arrest, the judge stated that he would verbally reinstruct the jury as to the elements of the offenses. The defendant asked him to also reinstruct as to self-defense and excessive force, but the judge declined to do so where the jury had not made that request. The defendant objected to the judge's refusal, but did not object to the content or substance of the self-defense or excessive force instructions. Accordingly, the objection did not preserve the issues now raised on appeal.

In his final charge, the judge instructed, inter alia, that "the Commonwealth must prove beyond a reasonable doubt that the [d]efendant did not act in self-defense. In other words, if you have a reasonable doubt whether or not the [d]efendant acted in self-defense, your verdict must be not guilty. It's the Commonwealth's burden to prove that." As discussed infra, in response to a jury question, the judge again instructed the jury as to the burden of proof in the self-defense context.

Instruction 9.260 of the Criminal Model Jury Instructions for Use in the District Court (2009), states, in relevant part as follows:
"To prove that the defendant did not act in self-defense, the Commonwealth must prove one of the following things beyond a reasonable doubt: [f]irst, that the defendant did not reasonably believe he (she) was being attacked or immediately about to be attacked, and that his (her) safety was in immediate danger; or [s]econd, that the defendant did not do everything reasonable in the circumstances to avoid physical combat before resorting to force; or [t]hird, that the defendant used more force to defend himself (herself) than was reasonably necessary in the circumstances."
Although the elements of self-defense (using nondeadly force) do not include the word "attacked," as noted, the model instruction has been cited with approval by the Supreme Judicial Court. Compare King, supra, with Commonwealth v. Adams, 458 Mass. 766, 774-775 (2011) (delineating elements of self-defense where nondeadly force is used).

We note that although self-defense was a live issue such that an instruction was warranted, the defense centered on credibility, not self-defense.

Defense counsel initially stated that he did not want the judge to inquire of the juror, but modified the request prior to voir dire by stating that he would "strongly caution the [c]ourt against making too far of an inquiry."

The defendant contends that this issue was preserved at trial because he objected generally to the prosecutor's improper characterization of the law of self-defense. We disagree. Absent an objection specifying the alleged error and identifying the basis of the objection, the issue is not properly preserved for appeal. See Mayer v. Cohen-Miles Ins. Agency, 48 Mass. App. Ct. 435, 444-445 (2000).